IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CYNTHIA BITTENBENDER,            :
    Plaintiff,                   :
                                 :
    v.                           :       CIVIL ACTION NO. 25-CV-5920
                                 :
FAMILY SERVICES ASSOCIATION      :
OF BUCKS COUNTY, *et al.*,        :
    Defendants.                  :

**<u>MEMORANDUM</u>**

**PEREZ, J.**                                        **FEBRUARY 26, 2026**

Plaintiff Cynthia Bittenbender filed this *pro se* civil action raising claims under federal and state law based on her ejectment from a hotel room for having an emotional support animal. Bittenbender also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Bittenbender leave to proceed *in forma pauperis* and dismiss her Amended Complaint.[1]

**I.    FACTUAL ALLEGATIONS**[2]

---

[1] The Court notes that after Bittenbender filed her initial Complaint, she filed two motions to supplement the records as well as exhibits. (ECF Nos. 6, 8, 9.) Because the Court is not authorized to permit piecemeal amendment or gradual supplementation of the operative pleading, her motions were denied, and she was given an opportunity to file a complete and comprehensive amended complaint to bring all of her allegations and claims together in one pleading. (ECF Nos. 7, 11.) Bittenbender subsequently filed her Amended Complaint (ECF No. 12), which is the operative pleading. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading," meaning "the most recently filed amended complaint becomes the operative pleading"); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings.").

[2] The factual allegations are taken from Bittenbender's Amended Complaint ("Am. Compl."). (ECF No. 12.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

Bittenbender names Family Services Association of Bucks County ("FSABC"), Brandy Stewart, Extended Stay America, and Megan Doe as Defendants.  (Am. Compl. at 1.)  Bittenbender alleges she "is a disabled adult woman," who is "autistic and suffers from ADHD, PTSD, COPD, neuropathy, and other serious medical conditions."  (*Id*. at 2.)  She asserts FSABC "administers county-funded emergency medical housing programs on behalf of Bucks County and exercises authority delegated by the County to place, supervise, and terminate housing for disabled and medically vulnerable individuals."  (*Id*. at 4.)  She further asserts that FSABC is a non-profit organization that receives federal financial assistance.  (*Id.* at 2, 7.)  Stewart, who she identifies as a licensed nurse employed by FSABC, was allegedly "responsible for placing, supervising, and terminating [her] emergency medical housing."  (*Id*. at 2.)  Specifically, Bittenbender alleges in March 2025, she "was placed by FSABC into emergency medical housing at Extended Stay America to stabilize her serious medical conditions."  (*Id*. at 5.)  She was "explicitly assured she could bring her legally recognized Emotional Support Animals (ESA), including a cat and a medically necessary bearded dragon and that her housing would remain stable until the issuance of a Housing Choice Voucher."  (*Id*.)  She claims Stewart "explicitly informed" her that she could bring her ESAs and also "paid or authorized the required pet fees."  (*Id*.)  When she arrived at Extended Stay America, Megan, the hotel's on-site manager, allegedly demanded additional pet fees[3] and was hostile towards Bittenbender after she asserted her rights and contacted FSABC for assistance.  (*Id*. at 3, 6.)  She claims on April 29, 2025, Megan entered her room "without notice, falsely claimed a 'no lizard policy,' and

---

[3] The Court notes that in her *in forma pauperis* motion, Bittenbender disclosed that she has two bearded dragons, described as disabled, in addition to her cat.  (*See* ECF No. 1 at 5.)  It is unclear if both bearded dragons were with her at the time she checked into Extended Stay America and, if so, whether pet fees were paid for the additional bearded dragon.

threatened removal unless [she] surrendered her ESA." (*Id.* at 6.)  Bittenbender contacted

Stewart, who she claims "refused to intervene, threatened to terminate her housing if she pursued

her accommodation [apparently a refence to her bearded dragon as an emotional support animal],

and instructed [her] not to raise further issues." (*Id.*)  Because she had resided at Extended Stay

America for more than thirty consecutive days, she believes she was a "permanent resident

entitled to Pennsylvania landlord-tenant protections." (*Id.*)

Bittenbender next asserts that Megan "publicly confronted" her on May 6, 2025, and

"announced immediate removal, refused to review legal aid documentation, and attempted to

forcibly enter [her] room." (*Id.*)  Later that same day, Bittenbender alleges that unspecified

"Defendants" – presumably including Megan but unstated – contacted the Bensalem Police

Department and falsely reported that her "funding had been terminated, resulting in police

presence and threats of forcible removal." (*Id.*)  She was then forced to vacate her room "under

duress, with police present." (*Id.*)  She further alleges Stewart "failed to correct false

information, provide alternative accommodations, or protect" her.  (*Id.*)

As a result of these events, she "suffered physical injury, emotional distress, aggravation

of disabilities, loss of housing, and harm to medically necessary support animals." (*Id.* at 8.)

She brings Fair Housing Act ("FHA") and related state law claims against all Defendants, an

Americans with Disabilities Act ("ADA") Title II and Rehabilitation Act ("RA") claim against

FSABC, and an ADA Title III claim against Extended Stay America. (*Id.* at 7-8.)  She also

brings a § 1983 claim against FSABC and Stewart for depriving her "of housing without notice

or opportunity to be heard" and treating her differently based on her disability in violation of the

Fourteenth Amendment. (*Id.* at 8.)  As relief, Bittenbender seeks money damages and injunctive

3

relief restoring her to "safe, stable, medically appropriate housing or equivalent emergency accommodations." (*Id*. at 9.)

## II.    STANDARD OF REVIEW

The Court grants Bittenbender leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Bittenbender is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an

4

objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

## III.   DISCUSSION

### A.   Fourteenth Amendment Claims

Bittenbender asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court, against FSABC and Stewart for depriving her "of housing without notice or opportunity to be heard" and treating her differently based on her disability in violation of the Fourteenth Amendment. (Compl. at 8.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Based on her allegations, FSABC is a nonprofit organization[4] and Stewart is a licensed nurse employed by FSABC. (Am. Compl. at 2.) Whether a private entity is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)

---

[4] *See also* https://fsabc.org/about/ (stating that "Family Service Association of Bucks County is a private, 501(c)(3) nonprofit, founded in 1953, serving Bucks County and the surrounding communities.") (last visited Feb. 17, 2026).

(internal quotations omitted).  "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Bittenbender alleges that FSABC and Stewart "acted under color of state law and performed a public function traditionally reserved to the government" in administering her housing placement and removal.  (Am. Compl. at 4.)  But courts analyzing § 1983 claims against privately run social services entities that operate housing programs and homeless shelters, as well as their employees, have concluded that they are not state actors.  *See, e.g.*, *Bell v. SELF Inc.*, No. 23-3646, 2023 WL 7004419, at *3 (E.D. Pa. Oct. 24, 2023) ("[A]ny constitutional claims cannot proceed because the named Defendants – a private non-profit organization and its emergency housing site – are not state actors subject to suit under § 1983."); *White v. Pagotto*, No. 22-3257, 2023 WL 4929306, at *2 (3d Cir. Aug. 2, 2023) (*per curiam*) (affirming the dismissal of § 1983 claims where plaintiff "made no allegations showing that the named defendant, Bethesda Project, Inc., [manager of a government subsidized housing program where plaintiff lived] is a state actor"); *Brown v. Res. for Hum. Dev.*, No. 21-1735, 2021 WL 2400616, at *5 (E.D. Pa. June 11, 2021) (collecting cases and finding privately run social services entities, such as a homeless shelter, or its operator, directors, and employees, are not considered state actors).

Furthermore, Bittenbender's allegation that FSABC or Stewart receives federal financial assistance does not render them state actors since state action is not plausibly alleged merely on the basis that a private individual or entity receives government funding. *See Chance v. Reed*, 538 F. Supp. 2d 500, 507 (D. Conn. 2008) (holding mere fact that Operation Hope, a nonprofit organization that provides emergency shelter and services to the homeless, receives federal and state funding and is organized as a § 503(c)(3) nonprofit organization under the Internal Revenue Code, does not make it a state actor); *see also Klavan v. Crozer-Chester Med. Ctr.*, 60 F. Supp. 2d 436, 443 (E.D. Pa. 1999) ("[D]efendants' receipt of government funding, even if combined with [extensive regulation], does not render defendants state actors, regardless of which test we employ."). Finally, Stewart's participation in the related police investigation resulting in Bittenbender's removal from Extended Stay America based on allegedly false information, also does not render her or her employer state actors for purposes of § 1983. *See Collins v. Christie*, No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983."); *see also Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 420 (E.D. Pa. 2020) ("Providing false information to the police—even deliberately—does not transform a private party into a state actor."), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023).

Even if she was able to allege state action, she has also not alleged a plausible Fourteenth Amendment violation. She asserts that FSABC employee Stewart refused to intervene with the hotel and threatened to terminate her housing if she pursued her emotional support animal accommodation. (Am. Compl. at 6.) An equal protection violation is not plausible under Bittenbender's facts. Disability, unlike race, religion, sex, and national origin, is not a suspect classification importing strict scrutiny to a discrimination claim under the Fourteenth

7

Amendment's Equal Protection Clause. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985); *Smith v. McClendon*, No. 14–6358, 2015 WL 2079689, at *5-6 (E.D. Pa. May 5, 2015) (collecting cases and holding that the plaintiff alleging a disability was not part of a protected class); *see also Audi v. Jenkins*, No. 12-836, 2012 WL 3011704, at *4 (M.D. Pa. July 23, 2012) (finding that disability was not a suspect classification under the Fourteenth Amendment). Rather, classifications on the basis of disability are subject to a rational basis review, *see Contractors Ass'n of E. Pa., Inc. v. City of Philadelphia*, 6 F.3d 990, 1001 (3d Cir. 1993), and Bittenbender concedes that the Defendants stated a basis for threatening to terminate her housing, namely her refusal to abide by the hotel's pet policy.

At best, it appears that Bittenbender is attempting to allege a "class of one" equal protection discrimination claim, meaning she must allege she was intentionally treated differently from others similarly situated and that there was no rational basis for the treatment. *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated [her] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"). Bittenbender does not allege that she is a member of a protected class, nor does she identify other individuals similarly situated and allege that she has been treated differently than those individuals. Accordingly, the Equal Protection Clause claim is not plausible.

Also, no due process violation is plausible under Bittenbender's facts. (*See* Am. Compl. at 8 (alleging FSABC and Stewart deprived her of housing without notice or opportunity to be heard.)) To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed

within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that she has been deprived of a constitutionally protected property or liberty interest. *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010).

First, Bittenbender does not allege that she had a written or oral lease for her hotel room such that she might have a property interest under Pennsylvania landlord/tenant laws.[5] More on point to the specific nature of the due process claim against FSABC, the Court has failed to locate any case law indicating that one can claim a property interest in the charitable provision of homelessness outreach services such as those described as provided by FSABC. *See generally*, *Thomas v. Cohen*, 453 F.3d 657, 663 (6th Cir. 2006) (holding that plaintiffs lacked a protected property interest under Kentucky law because their residence at a shelter was not governed by state law and, in the alternative, they failed to qualify as tenants); *Stone v. Pamoja House*, 111 F.

---

[5] "Without a lease, neither party's status as landlord or tenant can be created and no legal rights can accrue under landlord-tenant law." *Penn Warehousing & Distribution, Inc. v. SS United States Conservancy*, No. 22-2285, 2024 WL 3015307, at *4 (E.D. Pa. June 14, 2024) (quoting Ronald M. Friedman & Kelly A. Mroz, Pennsylvania Landlord Tenant Law and Practice 17 (5th ed. 2022)). But whether a hotel room is covered by landlord/tenant laws is at best unsettled. *See Greenwald Caterers Inc. v. Lancaster Host, LLC*, 670 F. Supp. 3d 187, 193 (E.D. Pa. 2023) (finding that Pennsylvania landlord-tenant law's implied warranty of habitability did not apply to hotels). *But see McCready v. Unity Sober Living Homes, LLC*, No. 24-2226, 2025 WL 1953274, at *4 (E.D. Pa. July 16, 2025) ("At oral argument, Unity equated itself to "a hotel" and described Mr. McCready's stay as "a long-term hotel stay," to distinguish itself from the typical landlord-tenant situation. . . . This assumes without support that a landlord-tenant relationship could never form during a long-term hotel stay. We are not sure Unity is correct.").

App'x 624, 626 (2d Cir. 2004) (*per curiam*) ("we have not found, and Stone has not identified, any New York law giving Stone an entitlement to reside in the shelter of his choice.  Absent such an entitlement, Stone has no property interest, and thus no due process claim.")' *Kennedy v. Fields*, No. 23-11949, 2024 WL 3331242, at *4 (E.D. Mich. May 14, 2024) (holding that persons in homeless shelters do not have a property interest in staying at a particular homeless shelter sufficient enough to trigger the protections of procedural due process), *report and recommendation adopted*, 2024 WL 3220720 (E.D. Mich. June 26, 2024); *Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009) (no property interest in placement within state's homeless shelter program because "broad discretion is given to local authorities in assigning the homeless to shelters"); *Chance*, 538 F. Supp. 2d at 508 ("In this case, there is no state law that gives the plaintiff a liberty interest in the continued use of Operation Hope's services, nor does such an interest arise out of the due process clause.").  Because there is no plausible allegation that Bittenbender enjoyed a protected property interest in FSABC's provision of outreach services, her procedural due process claim under § 1983 against the FSABC and Stewart will be dismissed.  Because she has also failed to allege state action, the dismissal will be with prejudice.

## B.  Fair Housing Act Claims

The FHA prohibits discrimination on the basis of race, color, religion, sex, familial status, or national origin, in a variety of real estate-related transactions.  *See* 42 U.S.C. § 3604.  In 1988, Congress passed the Fair Housing Amendments Act ("FHAA") extending coverage of the FHA to include individuals with disabilities.  *See Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).  The FHAA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services

10

or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). "Under the FHAA, 'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'" *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)). With respect to disability discrimination under § 3604(f), a plaintiff "may bring three general types of claims: (1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." *Id.* Bittenbender's claims fall under disparate treatment.

As an initial matter, although Bittenbender alleges she is disabled and is "autistic and suffers from ADHD, PTSD, COPD, neuropathy, and other serious medical conditions" (Am. Compl. at 2), the Amended Complaint does not allege any details about her conditions and, more importantly, that they "substantially limits one or more major life activities." Because Bittenbender identifies no activity, let alone a "major life activity," that she claims to be impaired by her conditions, she has not alleged sufficient facts to make plausible a claim that she is disabled for purposes of coverage under the FHAA against any named Defendant.[6]

Second, as stated the FHA makes it unlawful to discriminate in the sale or rental or in "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." §§ 3604(f)(1), (2)(A). While Bittenbender includes FSABC and Stewart among the Defendants on her FHA claim, she alleges only that FSABC is a non-profit program that administers county-funded emergency and medical

---

[6] This same failure also makes implausible her claims under the ADA and RA, discussed later.

11

housing programs and it employs Stewart as a nurse.  (*See* Am. Compl. at 2, 4.)  Typically, §

3604(f) is used to bring suits against landlords, but courts have also held that this act applies, for

example, to suits against municipalities and land use authorities.  *Wind Gap*, 421 F.3d at 176.

The Third Circuit, however, has suggested that the FHAA does not apply to, for example, suits

against public housing authorities who provide disabled persons with vouchers for housing

assistance because the FHAA imposes liability on property owners and was not "intended to

impose liability on those who purchase or lease housing on behalf of handicapped persons."

*Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1283 (3d Cir. 1993) ("[n]othing in

the text or legislative history of § 3604(f)(1) suggests to us that Congress intended to regulate

and thereby subject to judicial review the decision-making of public agencies which sponsor

housing for the handicapped.").  Because she does not allege that FSABC or Stewart was a

provider of a rental dwelling, but at best helped her obtain her hotel room at the Extended Stay

America, the FHA claims against them will be dismissed for this additional reason.

Extended Stay America presents a more complex analysis to determine if the claim

against it is additionally implausible based on the type of accommodation it allegedly provided.

Starting with the relevant allegations in the Amended Complaint, Bittenbender asserts that

Extended Stay America is "a corporate entity operating extended-stay facilities."  (Am. Compl.

at 3.)  She asserts that in March 2025, she "was placed by FSABC into *emergency medical*

*housing* at Extended Stay America *to stabilize* her serious medical conditions."  (*Id*. at 5

(emphasis added.))  She was allegedly "explicitly assured she could bring her legally recognized

Emotional Support Animals (ESA), including a cat and a medically necessary bearded dragon

and that her housing would remain stable *until the issuance of a Housing Choice Voucher*."  (*Id*.

12

(emphasis added.))   Finally, on May 6, 2025, she was removed from Extended Stay America after residing there for more than thirty days.  (*Id*. at 6.)

The first question to address is whether Extended Stay America rented a "dwelling" as that term is used in § 3604(f).  "Dwelling" means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence. . . ."  § 3602(b).  The FHA does not define "residence."  Where an act provides no statutory definition, "it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses the legislative purpose." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985) (quoting *Park'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 195 (1985) (internal quotations omitted)).  The Third Circuit has held that "the central inquiry" in whether a property constitutes a residence within the meaning of the FHA is (1) "whether the [plaintiff] intend[s] to remain in the [property] for any significant period of time" and (2) "whether [she] view[s] [the property] as a place to return to." *United States v. Columbus Country Club*, 915 F.2d 877, 881 (3d Cir. 1990).[7]  In *Columbus Country Club*, the Third Circuit applied this framework to determine that summer bungalows, leased to annual members and not allowed to be occupied on a year-round basis, constituted dwellings under the FHA. *Id.* at 879-81.  First, the Third Circuit determined that annual members were not "mere transients" since they intended to spend a

---

[7] In making this determination, the Third Circuit relied on the definition of "residence" found in Webster's Third New International Dictionary providing that a residence is: "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." *Columbus Country Club*, 915 F.2d at 881.  "Most courts that have considered the scope of the term have relied on the definition used in *United States v. Hughes Memorial Home*, 396 F. Supp. 544 (W.D. Va. 1975), which is 'a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit.'" *Hunter on behalf of A.H. v. District of Columbia*, 64 F.Supp.3d 158, 174 (D.D.C. 2014).

significant period of time at their bungalows, generally five months each year.  *Id.* at 881.

Second, the Court considered that nearly all annual members returned to their bungalows each

summer, and over the prior twenty years, there were only thirty-one transfers of ownership

within the community of forty-six bungalows.  *Id.*

The Third Circuit has also held that temporary accommodations like those found in a

drug and alcohol treatment facility qualified as dwellings under the FHA applying this same

framework.  *See Lakeside Resort Enters., LP v. Bd. of Sup'rs of Palmyra Twp.,* 455 F.3d 154,

158-60 (3d Cir. 2006).  The Court first considered whether the facility was intended or designed

for occupants to remain for a significant period of time.[8]  *Id.* at 158.  The Third Circuit

explained that although the average stay at the proposed facility was only 14.8 days, that length

was typically not based on intent to stay, but as result of health-insurance funding.  *Id.* at 159.

The Court emphasized that the "short, funding-limited, average stay is not dispositive" because

the relevant inquiry is whether the facility is "designed or *intended for occupancy as, a*

*residence.*"  *Id.* at 158–59.  The facility met the first prong of the Third Circuit's test because it

was intended to accommodate thirty-day stays as a matter of course and longer stays depending

on the circumstances.  *Id*. at 159.  Next, when analyzing whether the occupants viewed the

facility as a place to return to, the Court considered that the residents would eat meals together,

"return to their rooms in the evening, receive mail at the facility, and make it their 'residence'

while they were there."  *Id.* at 159-60.  The Court took into consideration that residents "hung

pictures on their walls and had visitors in their rooms," and the residents "treated [the facility]

---

[8] The Third Circuit recognized that it had not defined what a "significant period of time" is other than determining that both five months and the rest of an occupant's life, in the context of a nursing home, is significant.  *Lakeside*, 455 F.3d. at 158.  Cases from other courts, "found sufficient stays ranging from one month to four years."  *Id.*

like a home for the duration of their stays." *Id*. at 160.  The Court concluded that the facility "satisfies (*though barely*) the second prong." *Id.* (parenthetical in original but emphasis added).

The Third Circuit's first factor under *Columbus Country Club* is whether Bittenbender intended "to remain in the [property] for any significant period of time."  915 F.2d at 881.  Based on her allegations that she was placed at Extended Stay America for emergency medical housing to stabilize her condition until she received her Housing Choice Voucher, these assertions cut against a plausible claim that her hotel room was a covered dwelling.  While she ultimately stayed for over thirty days (Am. Compl. at 6), the Third Circuit emphasized when discussing the length of stay in *Lakeside*, the relevant inquiry is whether the property is "designed or *intended for occupancy as, a residence*."  455 F.3d at 158-59.  Guests at hotels, even those intended for longer stays like Extended Stay America and similar properties, are typically considered to be "transient" and several courts have held that these accommodations are not a "dwelling" under the FHA.  *See, e.g., Jerkins v. HPT IHG Props. Tr.,* No. 19-62198, 2019 WL 13257007, at *3 (S.D. Fla. Nov. 14, 2019) (finding Staybridge Suites, a long-term hotel similar to Extended Stay America, is not a "dwelling" under the FHA); *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1214 (11th Cir. 2008) (holding that a "house, apartment, condominium, or co-op that you live in is a 'residence,' but the hotel you stay in while vacationing at Disney World is not"); *Connecticut Hosp. v. City of New London*, 129 F. Supp. 2d 123, 134 (D. Conn. 2001) ("FHA does not cover lodgings for transient guests, such as hotels.").  *See also Selvaggi v. Borough of Point Pleasant Beach*, No. 22-708, 2024 WL 303677, at *16 (D.N.J. Jan. 26, 2024) (stating that "the short-term rental properties at issue in this case [are] distinguishable from the other properties that the Third Circuit has found to be dwellings under the FHA.  Plaintiffs' short-term

15

rental properties appear to be expressly not intended for occupancy for a significant period of time.").

Even if Bittenbender could further amend her pleadings to satisfy the first prong, which the Court notes is not likely, her claim would further fail on the second prong which is whether she viewed Extended Stay America "as a place to return to." *Columbus Country Club*, 915 F.2d at 881. Cases hold, for example, that for elderly persons residing at a nursing facility, that facility "would be their home, very often for the rest of their lives," *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1102 (3rd Cir. 1996), and for club members leasing summer bungalows, they returned to their bungalows summer after summer and saw them as homes, *Columbus Country Club*, 915 F.2d at 881. A drug and alcohol treatment facility only "barely" met the second prong even though residents did things like eat meals together in common areas, received mail at the facility, and hung pictures on their walls. *Lakeside*, 455 F.3d at 159. By contrast, Bittenbender acknowledges her placement at Defendant's hotel was based on an emergency situation to stabilize her medical conditions until a Housing Choice Voucher was issued (*see* Am. Compl. at 5), meaning the second Columbus *Country Club* prong is not plausibly alleged either. *Accord Selvaggi*, 2024 WL 303677, at \*16 (holding that the short-term beach rentals at issue failed the second prong, stating that, whether or not they were "home-like settings" was not the test; "[t]he inquiry is whether the tenants see and treat the properties *as their homes*"). Based on her allegations, applying the *Columbus Country Club* framework, she has failed to state plausibly that Extended Stay America provided a "dwelling" under the FHA. Accordingly, the Court will dismiss Bittenbender's FHA claims against all Defendants. The dismissal will be with prejudice since, while she might be able to allege additional facts about her disability, she has not named a Defendant that might be liable for handicap discrimination under the FHA.

16

## C. Disability Discrimination Claims

Bittenbender next asserts disability discrimination and retaliation claims, apparently based on her need to have emotional support animals, against FSABC under Title II of the ADA, which requires public entities to provide, in all of their programs, services, and activities, a reasonable accommodation to qualified individuals with disabilities. *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019). She also brings claims under the Rehabilitation Act ("RA") against FSABC. "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (internal quotations, citations, and alterations omitted). Although the substantive standards for determining liability under the RA and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 "must show that the allegedly discriminating entity receives federal funding." *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

Bittenbender's claims against FSABC under ADA Title II are not plausible because Title II claims are limited to public entities. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) ("individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively."). FSABC is not a public entity but is alleged to be a private, nonprofit organization. (Am. Compl. at 2.) Accordingly, this claim is dismissed.

17

Bittenbender also brings an RA claim against FSABC and an ADA Title III claim against Extended Stay America.  Title III prohibits places of public accommodation from discriminating against individuals with disabilities in connection with goods, services, facilities, privileges, advantages or accommodations.  *See* 42 U.S.C. § 12182(a).  Section 504 of the RA prohibits disability discrimination in "any program or activity receiving Federal financial assistance." *Pedro v. Hilton Worldwide, Inc.*, No. 24-5725, 2025 WL 220023, at *6 (E.D. Pa. Jan. 16, 2025) (citing 29 U.S.C. § 794(a)).  To state a claim under Title III, a plaintiff must plausibly allege that: (1) she has a disability; (2) the defendant is a public accommodation within the meaning of the statute; and (3) she was denied goods, services, facilities, privileges, advantages or accommodations due to discrimination based on her disability, which can include failure to reasonably accommodate her disability.  *See Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019).[9]  "To state a claim under § 504, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) she was discriminated against based on her disability."  *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 409 (M.D. Pa. 2019) (quoting *Reed v. Schuylkill Health System*, 2013 WL 6479127, *3 (M.D. Pa. Dec. 9, 2013)).

To allege plausibly that she is a "qualified individual with a disability" under both the ADA and the RA, Bittenbender must provide facts to show that she has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life

---

[9] The Court notes only injunctive relief is available to a private plaintiff suing under Title III of the ADA, meaning monetary relief is not available.  *See* 42 U.S.C. § 12188(a); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003) ("Title III defendants cannot be liable for money damages."); *see also Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) ("Title III of the ADA, which prohibits discrimination on the basis of disability in public accommodations, only provides for injunctive relief." (citation omitted)).

18

activities of such individual . . . ."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* at § 12101(2)(A).  The 2008 ADA Amendments Act clarified that the definition of disability and "substantially limits" should be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted."  42 U.S.C. § 12102(4)(A)-(B).  However, "to sufficiently allege that an impairment interferes with a major life activity, a plaintiff must elaborate on whether the alleged impairment interfered with [her] alleged major life activity during the period of alleged discrimination by Defendants," and "the plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022) (cleaned up), *aff'd*, No. 22-2505, 2023 WL 8708417 (2d Cir. Dec. 18, 2023).

Bittenbender alleges she is disabled and is "autistic and suffers from ADHD, PTSD, COPD, neuropathy, and other serious medical conditions."  (Am. Compl. at 2.)  However, as already noted she does not assert that her conditions interfere with any major life activities and her conclusory allegations that she was subject to discrimination because of her alleged disability are not sufficient to state a plausible claim under Title III of the ADA and § 504 of the RA.  *See, e.g., Hartman v. Bank of New York Mellon*, 650 F. App'x 89, 92 (3d Cir. 2016) (*per curiam*) (summarily affirming dismissal of disability discrimination claims where allegations were "entirely conclusory"); *Evans v. President of Thomas Jefferson Univ. Hosp.*, No. 22-1371, 2022 WL 2916685, at *5 (E.D. Pa. July 25, 2022) (dismissing complaint where plaintiff did "not allege whether or how his alleged disability impacts his daily living, and his conclusory

19

allegations that he was subject to discrimination because of his disability are not sufficient to state a plausible claim"); *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint.").

Even if Bittenbender had plausibly alleged her disability substantially impaired a major life activity, her failure to accommodate and retaliation claims – based on her emotional support animals (Am. Compl. at 7) – is not plausible because emotional support animals are explicitly excluded from the definition of a service animal under the ADA.  Whether an animal qualifies as a service animal is a two-part test.  First, the animal must be "individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability."  28 C.F.R. § 35.104.  Second, the tasks performed by the animal "must be directly related to the individual's disability."  *Id.*  The Third Circuit has held that animals that merely provide emotional support, comfort, or companionship do not qualify as service animals.  *See id; see also Revock v. Cowpet Bay W. Condo. Ass'n,* 853 F.3d 96, 100 n.2 (3d Cir. 2017) ("Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability. . . .[T]he provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition." (quoting *id*.)).  Because the ADA regulations explicitly exclude emotional support animals, the Court will dismiss Bittenbender's failure to accommodate and retaliation ADA Title III claims against Extended Stay America with prejudice since amendment would be futile.  *See Roberts v. Gettle*, No. 23-790, 2023 WL 12097113, at *4 (M.D. Pa. Oct. 17, 2023), *report and recommendation adopted*, 2023 WL 12097112 (M.D. Pa. Dec. 1, 2023), *aff'd*

*sub nom.*, No. 23-3198, 2025 WL 1719961 (3d Cir. June 20, 2025) (finding denial of an emotional support animal is not cognizable under the ADA); *see also Baird v. 1600 Church Rd. Condo. Ass'n,* No. 17-4792, 2017 WL 5570333, at *4 (E.D. Pa. Nov. 17, 2017) (holding emotional support or emotional therapy dogs do not qualify as service animals under the ADA).

Bittenbender's claims under the RA against FSABC because she was "excluded from participation and subjected to discrimination solely because of her disability" (Am. Compl. at 7), also fails because there is no allegation that FSABC denied her goods, services, facilities, privileges, advantages or accommodations due to discrimination based on her disability. *Giterman*, 361 F. Supp. 3d at 409.  Rather, Bittenbender alleges at best that FSABC did accommodate her emotional support animals by paying the required pet fees and assisting her in receiving emergency temporary housing with her animals while she waited for a Housing Choice Voucher to be issued.  (Am. Compl. at 5.)  Therefore, the claims against FSABC under the RA will also be dismissed.[10]

### D.  State Law Claims

Because Bittenbender's federal claims will be dismissed, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

---

[10] The Court recognizes Bittenbender filed a motion from injunctive relief after filing her Amended Complaint, which was denied for the reasons stated in the Court's Order.  (ECF No. 14.)  In her motion, she alleges she is in an unsafe environment based on her "abuser" and requests FSABC be enjoined from leaving her in a housing situation involving "known domestic violence."  (ECF No. 13 at 2.)  Even considering the allegations stated therein, although concerning, protection from domestic violence is not relevant to the ADA or RA, and she still does not allege FSABC failed to reasonably accommodate her based on her alleged disability.

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  Bittenbender does not allege the citizenship of the parties, but it appears from her pleading that both she and some—if not all—of the Defendants may be Pennsylvania citizens.  Accordingly, she has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims she may intend to pursue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Bittenbender leave to proceed *in forma pauperis* and dismiss her Amended Complaint.  Leave to amend will not be given as any attempt to amend would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  An appropriate Order dismissing this case will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

**HON. MIA R. PEREZ**

22